Below is an Opinion of the Court.

_____
RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | ) Bankruptcy Case |
| | ) No. 09-38599-rld7 |
| DAVID AND LINDA CULPEPPER, | ) |
| | ) MEMORANDUM OPINION |
| Debtors. | ) |

Following the entry of the order granting debtor Linda Marie Culpepper's ("Ms. Culpepper") Motion for Order of Contempt on November 14, 2012, I held a hearing on the request of Ms. Culpepper's counsel ("Counsel") for an award of attorneys' fees and costs ("Request for Attorneys' Fees") on January 30, 2013. Wells Fargo Bank, N.A. ("Wells Fargo") previously had filed detailed objections ("Objection"), supported by exhibits, to the Request for Attorneys' Fees. After hearing argument from counsel for the parties, I took the matter under advisement.

In deciding this matter, I have considered carefully the written submissions presented by the parties and the arguments they have made. I also have reviewed relevant legal authorities, both as cited to me and as discovered during the course of my own research.

Page 1 - MEMORANDUM OPINION

In light of that consideration and review, this Memorandum Opinion sets out the court's findings and conclusions under Civil Rule 52(a), applicable with respect to this contested matter under Rules 7052 and 9014.[1]

I. Awards of Attorneys' Fees and Costs in Civil Contempt Proceedings

The Ninth Circuit has recognized that an award of attorneys' fees and costs is appropriate to the prevailing movant in a civil contempt proceeding. Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1195 (9th Cir. 2003) ("We emphasize that attorneys' fees are an appropriate component of a civil contempt award.") (emphasis in original); Walls v. Wells Fargo Bank, 276 F.3d 502, 507 (9th Cir. 2002). Wells Fargo does not contest that basic proposition, but rather argues on a number of grounds that the totals of $55,113 attorneys' fees and $5,404 costs requested by Counsel are not reasonable and should be reduced substantially. I have considered the parties' arguments and have come to the following conclusions.

II. Appropriate Billing Rates

In the Request for Attorneys' Fees, Counsel list their billing rates as follows:

///

///

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules." The Local Bankruptcy Rules for the Bankruptcy Court for the District of Oregon are referred to as "LBRs."

Page 2 - MEMORANDUM OPINION

```
         Partners                    $345 per hour
         Attorneys                   $300 per hour
         Senior Paralegals           $100 per hour
         Cert. Law Clerks            $100 per hour
```

As highlighted by Wells Fargo in Exhibit C to the Objection, the judges of the Bankruptcy Court for the District of Oregon have "determined that [they] will use the Oregon State Bar Economic Survey as [the] initial benchmark" in evaluating whether attorneys' hourly rates are reasonable. That position is consistent with the rule stated by the Supreme Court in a different context that "reasonable fees" are "to be calculated according to the prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 895 (1984). Both sides argue from information in the Oregon State Bar Economic Survey points favorable to their respective positions.

Of greater help in this situation is the information included by Wells Fargo in Exhibit A to the Objection, which is a copy of the form Professional Services Agreement ("Professional Services Agreement") posted on Counsel's website. At the Hearing, Counsel did not contest that the Professional Services Agreement from their website included current information.

In the Professional Services Agreement, the following billing rates are stated: "$285.00 an hour for a Partner (Eric W. Olsen, Lars H. Olsen, Rex K. Daines, Kevin D. Swartz), $185.00 an hour for an Associate (Neal Peton, Keith Karnes, Dwayne Murray or others), Paralegal time shall not exceed $95.00 an hour." While the Professional Services Agreement covers basic services to be rendered in a consumer chapter 7 or 13 bankruptcy case, there is nothing in the agreement form indicating that

Page 3 - MEMORANDUM OPINION

the referenced billing rates would not apply with respect to any other services to be performed for clients by the firm.

In this matter, I am considering an appropriate award of attorneys' fees and costs with respect to prosecuting a motion for civil contempt based on a violation of the discharge injunction in a consumer chapter 7 case. An objective of the Bankruptcy Code, noted in the legislative history to § 330 (see, e.g., H. Rept No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977), at 329-30), was to confirm attorneys' bankruptcy related services are to be compensated consistently with the cost of comparable services outside of bankruptcy. "Ultimately, the standard for the awarding of fees in consumer bankruptcy cases is the same as in other bankruptcy cases, the value of comparable services in nonbankruptcy matters of similar difficulty." 3 Collier on Bankruptcy ¶ 329.04[1][a] (Alan N. Resnick and Henry J. Sommer, eds., 16th ed.). "The fee applicant has the burden of 'produc[ing] satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" In re Parreira, 464 B.R. 410, 420 (Bankr. E.D. Cal. 2012) (quoting Blum v. Stenson, 465 U.S. at 895 n.11).

To determine an appropriate market billing rate, I cannot think of a better indicator of the market rate than the current rates being advertised by Counsel to the public. Accordingly, consistent with the uncontradicted terms of the Professional Services Agreement, I find that the appropriate billing rates for Counsel are $285 per hour for partners, including Eric Olsen and Rex Daines, $185 per hour for associate

Page 4 - MEMORANDUM OPINION

attorneys, including Michael Fuller, the primary attorney for Ms. Culpepper in this matter, and $95 per hour for paralegals and certified law clerks.

III. "Reasonableness" of Itemized Services

"The [Bankruptcy] Code mandates that professional fees must be actual, necessary and reasonable." In re Parreira, 464 B.R. at 414. Wells Fargo challenges the reasonableness of Counsel's itemized fees on a number of grounds, which I will deal with in turn.

A. Clerical Work

"[C]osts associated with clerical tasks are typically considered overhead expenses reflected in an attorney's hourly billing rate, and are not properly reimbursable." Sterling Sav. Bank v. Sequoia Crossing, LLC, 2010 WL3210855, at *7 (D. Or. Aug. 11, 2010) (quoting Whitworth v. Nat'l Enter. Sys., 2010 WL1924504, at *7 (D. Or. Apr. 21, 2010)); In re Lindquist, 2006 Bankr. LEXIS 2003, at *18-19 (Bankr. D. Or. Aug. 25, 2006) (denying application for supplemental fees and expenses submitted by debtor's counsel for time entries covering "the performance of administrative tasks that more appropriately should be charged to overhead and [are] not reasonably included in client billings."); LBR 2016-1(b)(2)(D). "Tasks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents." Sterling Sav. Bank v. Sequoia Crossing, LLC, 2010 WL3210855, at *7.

In Exhibit B to the Objection, Wells Fargo marked a number of

time entries on Counsel's itemization that appear to be clerical.
Following my own review of the itemization, I agree that many of the
marked time entries are clerical in nature, should be included in billing
rates as overhead and are not reimbursable as reasonable attorneys' fees.
Typical of such time entries are the following:

| 12/21/2011 | file certificate of service re motion for contempt hearing | DG | .20 |
| 1/27/2012 | respond to mf, prepare mailing | DG | .40 |
| 1/29/2012 | file correspondence re service on wf | MRF | .10 |
| 2/3/2012 | File cert. of service re order to show cause | MRF | .10 |

I find that it is appropriate to disallow 0.10 hours of partner itemized
time, 2.4 hours of associate attorney itemized time and 12.65 hours of
paralegal itemized time as essentially clerical in nature.

B. <u>Duplicative Work; More than One Attorney Appearing at Hearings and Attorney Conference Time</u>

Wells Fargo complains that "eight different people (RD, DG, MRF, EO, JV, JE, AH, and DJ), at least four of whom are attorneys, all recorded time on this case." Objection, at p. 10. Wells Fargo also objects to the billing rate requested for Mr. Fuller, the primary attorney working for Ms. Culpepper on this matter, based on his limited experience as a 2009 law school graduate. <u>See</u> Objection, at p. 4. Wells Fargo further objects that "two attorneys for [Ms. Culpepper] attended the October 5, 2012, evidentiary hearing. In contrast, only one attorney represented Wells Fargo at the same evidentiary hearing." Objection, at p. 10.

It is not surprising, considering how extended litigation of

Page 6 - MEMORANDUM OPINION

Ms. Culpepper's contempt motion became and in light of the difficult issues involved, that a number of hands at the firm touched this litigation. Further, in light of his limited experience, Mr. Fuller is to be commended, rather than penalized by a fee reduction, for having consulted with his colleagues at the firm, strategically and otherwise, as litigation of the contempt motion proceeded.

It appears that Counsel made some effort to eliminate billing for duplicate services. In his Declaration in support of the Request for Attorneys' Fees, Mr. Fuller states,

> 10. The ledger has been substantially discounted by Ms. Culpepper's counsel, including reductions in the hours expended to prevail at evidentiary hearing. In addition, over 100 attorney time entries were reduced to a 20th of an hour, and over 50 attorney tasks were not billed at all.

I have reviewed the itemization submitted in light of Wells Fargo's objection that duplicate work is reflected, and I find the itemization neither unreasonable nor excessive on this ground. Accordingly, I am not making any reduction to the fees requested by Counsel for duplicative services.

C. <u>Vague Time Entries</u>

It is axiomatic that entries in a time billing itemization must be clear enough for the court to determine their reasonableness. Wells Fargo objects to the vagueness of some time entries in the itemization submitted by Counsel, and after reviewing the itemization, I must agree with respect to several time entries. I find the following time entries to be too cryptic to allow for effective reasonableness review:

///

Page 7 - MEMORANDUM OPINION

| 12/28/2011 | read email from clts, update file, review letters | MRF | 1.00 |
| 2/2/2012 | respond to mike's email | EO | .10 |
| 2/2/2012 | email mf re order | RD | .10 |
| 3/2/2012 | call w/mrf re transcripts, value of case | RD | .30 |
| 6/25/2012 | meet w/mrf re: first draft of brief | JE | 1.00 |
| 11/5/2012 | reply to rd quick msg | MRF | .05 |

Accordingly, I will disallow 0.50 hours of partner itemized time, 1.05 hours of associate attorney itemized time and 1.00 hour of paralegal time.

D. <u>Time Spent on Mr. Culpepper's Claim</u>

Because Mr. Culpepper was not a borrower/obligor with respect to the Wells Fargo debt, the Motion for Order of Contempt was not properly brought in his behalf, as Counsel ultimately recognized. Wells Fargo objects that fees requested for time spent with respect to a claim(s) for Mr. Culpepper should be disallowed, and I agree.

Because it is difficult to differentiate between time spent as to each of the Culpeppers in certain time entries, I will allow 50% with respect to each of the following time entries:

| 12/9/2011 | draft memo in support of motion | MRF | 3.00 |
| 12/9/2011 | draft declaration of lc | MRF | 1.00 |
| 12/11/2011 | cont. draft declaration of lc | MRF | .50 |

In addition, I will disallow entirely, the following time entry:

| 5/30/2012 | call w/philip re depos, expert report, letter to chambers | MRF | .20 |

Page 8 - MEMORANDUM OPINION

E. Time Respecting Expert Witnesses

Wells Fargo argues that attorney time spent with respect to consultation with Dr. Grossman, who ultimately did not appear as a witness, should not be allowed. However, Dr. Grossman's unavailability to testify at the final hearing resulted from the hearing date being set over at Wells Fargo's request, and I do not find it appropriate to penalize Counsel in those circumstances.

IV. Reasonable Costs

Neither Civil Rule 54 nor Rule 7054 is particularly illuminating as to specifically what costs are allowable to a prevailing party. Accordingly, in determining appropriate awards of costs, the court relies primarily on the detailed provisions of LBR 2016-1(b). Wells Fargo objects to four categories of costs included in the Request for Attorneys' Fees that I consider in turn: 1) expert witness fees; 2) fees for attorney travel time; 3) travel and lodging costs for the Culpeppers to attend hearings and appointments; and 4) two cost entries that I consider as miscellaneous.

A. Expert Witness Fees

Generally, expert witness fees are not recoverable by the prevailing party as part of the attorney fee award or costs unless specifically authorized by statute. Malbco Holdings, LLC v. AMCO Ins. Co., 2010 WL2572849, at *15-16 (D. Or. June 22, 2010); Thomas v. U.S. Bank, N.A., 2008 WL974734, at *5-6 (D. Or. Apr. 8, 2008) ("Unless explicitly authorized by statute, expert witness fees are not recoverable.").

Page 9 - MEMORANDUM OPINION

Counsel has cited no statutory authority for me to award expert witness fees in this matter, and I am not aware of any such statutory authority. Accordingly, I will disallow any expert witness fees requested as costs.

B. <u>Attorney Travel Time</u>

Wells Fargo objects to my approving any fees with respect to Mr. Daines' travel time from Bend to Portland for the final hearing on the contempt motion. LBR 2016-1(b)(2)(C)(III) in relevant part provides:

> If the applicant did not work on client matters while traveling, travel time will be allowed at one-half of the applicant's hourly rate.

In the Request for Attorneys' Fees, Mr. Daines is requesting fees at no more (and possibly less) than one-half his hourly rate for the subject travel time between Bend and Portland for the final hearing. I find that Mr. Daines attending and participating in the final hearing with Mr. Fuller was not unreasonable. Mr. Daines' request that his travel time be compensated is consistent with what is allowed under the applicable LBR, and I will overrule Wells Fargo's objection on this point.

C. <u>The Culpeppers' Travel and Lodging Costs</u>

LBR 2016-1 addresses "Compensation for Services Rendered & Reimbursement of Expenses," primarily of professionals. There is no provision for reimbursement of the client's travel expenses in the LBR. However, I have some discretion in the imposition of reasonable costs.

> Subdivision (d) of [Civil Rule] 54 contains provisions with respect to costs and, <u>although ultimately leaving the question of costs to the discretion of the court, provides that the court "should" allow costs to the prevailing party unless it, a federal statute or a Civil Rule otherwise directs</u>.

10 Collier on Bankruptcy ¶ 7054.05 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.) (emphasis added).

Wells Fargo objects to my allowing any of the Culpeppers' lodging and travel costs. Ms. Culpepper chose her own counsel, and to the extent she seeks an allowance of lodging and travel costs for meeting with Counsel, I will disallow such costs as not reasonable. However, the Culpeppers live in Bend, and when the parties could not settle their differences, they were required to travel to Portland for the final hearing on the Motion for Order of Contempt. I will allow the Culpeppers' lodging and travel costs to attend the final hearing in Portland. I also will allow their limited reimbursement request for costs associated with meeting with the expert. Wells Fargo has raised no objection as to the amounts requested for such lodging and travel costs.

D. <u>Miscellaneous Costs</u>

Wells Fargo challenges two other cost items from Counsel's itemization: 1) the $90.00 cost for a deposition videographer and 2) $485.00 for graphic design of the demonstrative exhibit. Wells Fargo argues that the videographer cost claim should not be reimbursed because there was no videographer used at the deposition. I agree and will disallow the $90.00 cost claim. As to the demonstrative exhibit design cost of $485.00, Wells Fargo argues that it is excessive and should be reduced by half.

The demonstrative exhibit was submitted early and basically provided an enlarged time line for postdischarge telephone calls made by Wells Fargo to Ms. Culpepper. As I recall, the demonstrative exhibit was not used during the evidentiary hearing because the included information

Page 11 - MEMORANDUM OPINION

was available from admitted exhibits and discussed thoroughly during witness testimony and oral argument.  In these circumstances, I find that Wells Fargo's objection is well taken, and I will deduct one-half of the requested reimbursement for the demonstrative exhibit and allow $242.50 as a cost reimbursement.

V. <u>Ultimate Calculations and Conclusions</u>

I have made calculations of allowable Counsel fees and costs in light of the foregoing analysis and findings.  Accordingly, I will allow Counsel attorneys' fees in the total amount of $37,011 and costs in the total amount of $1,359.50, for a total award of $38,370.50.  The court will prepare and enter a consistent order contemporaneous with entry of this Memorandum Opinion.

# # #

cc:  David and Linda Culpepper
     Michael R. Fuller, Esq.
     Robert J. Bocko, Esq.